Filed 5/8/25  P. v. Aloe CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063001 |
| v. | (Super. Ct. No. 13WF1563) |
| ALTON CHRISTOPHER ALOE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, David Hoffer, Judge. Affirmed.

Shaghayegh Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

\*           \*           \*

This is the third appeal in this matter arising from defendant Alton Christopher Aloe's conviction for attempted premeditated murder, assault with a firearm, and attempted vehicular burglary. In the first appeal, *People v. Aloe* (Nov. 23, 2020, G056882) [nonpub. opn.] (*Aloe I*), we rejected Aloe's substantive claims. We reversed for resentencing and remanded for the trial court to consider its then newly granted discretion on whether to strike prior serious felony enhancements. In the second appeal following resentencing, *People v. Aloe* (Apr. 17, 2023, G060893) [nonpub. opn.] (*Aloe II*) we again reversed for resentencing, concluding that recent amendments Penal Code 1170[1] limited the trial court's discretion to impose the middle term if childhood trauma was a contributing factor to the crime.

This appeal follows the second resentencing hearing, at which Aloe was sentenced to a determinate sentence of 10 years and an indeterminate term of 14 years to life. Aloe now contends that the trial court erred in failing to strike a firearm enhancement and did not properly apply section 1170. We conclude the court did not abuse its discretion and therefore affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

"Late one night in June 2012, Aloe was sitting in a van parked in Costa Mesa with Brian 'Milky' Evenson, Cathy E., and Lee, the van's driver. Lee was there to perform some sort of work on a nearby parking lot. Cathy, who was friends with Aloe but who had only recently met Evenson and Lee, was homeless and temporarily living in Lee's van with a friend's dogs. As all

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

four individuals were sitting in the van, Cathy noticed a revolver inside the van.

"At about 2:00 a.m., Lee began unloading his tools and started to work on the parking lot. Cathy stayed inside the van, and Aloe and Evenson 'took off.'

"Around 2:30 a.m., Augustin H. was bicycling home from work to his mother's house in Costa Mesa, just around the corner from where Lee's van was parked. When he was nearly home, Augustin noticed the motion-activated floodlight outside his mother's house was shining into the alley. As he moved closer, he noticed a man, whom he later identified as Aloe, on the ground beside his mother's car.

"According to Augustin, he asked Aloe what he was doing there. Aloe stood up slowly and asked, 'So you have a problem?' Aloe then punched Augustin in the jaw, at which point Augustin noticed Aloe was wearing blue latex gloves. Augustin responded, 'So you want to fight?' and took off his jacket.

"Aloe pulled out a revolver and held it over his head. Augustin called out the names of his son and mother, and Aloe told him to 'calm down' and to 'quiet down [and] get over here.' During this exchange, the motion light was still on, and Augustin was able to see Aloe's facial features.

"Augustin's son, Austin H., who had been sleeping inside in the house, woke up, heard the argument, and went outside. Aloe then shot Austin in the chest. Austin did not notice any blue gloves on Aloe's hands. He described Aloe as tall and said he had . . . light hair past his ears; he could not make out his facial features.

"Aloe and another man who had been hiding behind a car fled down the alley. Austin briefly tried to chase after them, but he could not breathe. He was later hospitalized due to a collapsed lung.

"Cathy testified that Aloe and Evenson returned to the van that evening and said, '[C]ome on. We got to go. We got to get out of here.' She said they were 'agitated' and 'in a hurry' to leave, even though Lee had not yet finished his work. Lee, Aloe, and Evenson 'threw everything in the van,' and the four drove away.

"According to Cathy, as they were driving away, Evenson told them he and Aloe had been planning to break into cars when two men confronted them. Evenson said Aloe told the men to back off and pointed a gun at the younger man, and when he did not back off, Aloe shot him." (*Aloe I, supra,* G056882.) Augustin later identified Aloe in a photographic lineup.

"An information charged Aloe with attempted premeditated murder (count 1), assault with a firearm (count 2), and attempted second degree vehicle burglary (count 3). The information also alleged various enhancements based on Aloe's use of a firearm causing great bodily injury (§§ 12022.5, subds. (a) & (d), 12022.53, subd. (d), 12022.7, subd. (a)), that Aloe had suffered two prior 'strikes' under the Three Strikes law (§§ 667, subds. (d) & (e)(2)(A), 1170.12, subds. (b) & (c)(2)(A)), that Aloe had a prior serious felony (§ 667, subd. (a)(1)), and that Aloe had served three prior prison terms (§ 667.5, subd. (b)).

"A jury found Aloe guilty of all charges and found the enhancements true. Aloe admitted the truth of his prior convictions. At sentencing, the trial court exercised its discretion under section 1385 to strike

4

one of Aloe's prior strikes and granted the parties' joint motion to strike one of his prior prison term enhancements." (*Aloe II, supra,* G060893.)

Aloe was originally sentenced to a determinate term of 23 years followed by 14 years to life. We reversed and remanded that sentence so the court could exercise its discretion whether to strike prior serious felony enhancements under section 667, subdivision (a).

At the first resentencing hearing, the court vacated Aloe's prison priors on the attempted murder count and the assault with a firearm count. Aloe's sentence was reduced to a determinate term of 13 years and an indeterminate term of 14 years to life. Aloe again appealed.

In his second appeal, he argued he was entitled under then recent amendments to section 1170, which made a low-term sentence presumptively appropriate when childhood trauma is a "contributing factor" to the commission of the offense. (§ 1170, subd. (b)(6)(A).) We concluded that resentencing was appropriate.

At the second resentencing hearing, which is the hearing relevant to the instant appeal, Aloe argued he was entitled to a full resentencing and the benefit of all recently enacted laws. At the hearing, the trial court agreed he was entitled to a full resentencing hearing. The court struck the great bodily injury enhancement as to the attempted murder count (§ 12022.7, subd. (a)), and dismissed the serious felony priors as to the counts for attempted murder and assault with a firearm (§ 667.5, subd. (b)). With the exception of those changes, the court expressly decided to leave the existing sentence intact. Aloe's sentence was reduced to a determinate term of 10 years and an indeterminate term of 14 years to life. Aloe now appeals.

5

## DISCUSSION

## I.

### THE FIREARM ENHANCEMENT

Aloe argues the trial court abused its discretion by failing to strike a 10-year enhancement for personal use of a firearm. (§ 12022.5, subd. (a).) This enhancement was attached to count 1, attempted murder. He contends the trial court "improperly concluded Aloe's mental illness, prior victimization and childhood trauma did not 'substantially contribute' to the commission of the offense, and failed to afford great weight to those factors."

*A. Section 1385, subdivision (c)*

As amended by Senate Bill No. 81 (Stats. 2021, ch. 721, § 1), section 1385 permits the court to exercise its discretion to strike or dismiss certain enhancements, or to strike the punishment for those enhancements. (§ 1385, subds. (a), (b)(1).) Under subdivision (c)(2), in exercising that discretion, "the court shall consider and afford great weight to evidence offered by the defendant to prove" that certain mitigating circumstances are present. Those circumstances "mental illness" (§ 1385, subd. (c)(3)(D)) and "prior victimization or childhood trauma" (§ 1385, subd. (c)(3)(E)). Both require "evidence" that the mitigating circumstance "is connected" to "the current offense." (§ 1385, subd. (c)(3).) "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)

We review the trial court's decision for abuse of discretion. (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1093.) "A court abuses its sentencing discretion when it acts arbitrarily and capriciously, relies on improper matter in reaching its decision, or is unaware of the scope of its

discretion so that it does not exercise informed discretion at all." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765.) "The burden is on the party challenging the sentencing decision to show that the court abused its discretion." (*Ibid.*)

In *People v. Walker* (2024) 16 Cal.5th 1024, 1033, the California Supreme Court concluded that it was "clear that the structure [of section 1385 (c)(2)] does not 'presume' [citation] an enhancement should be dismissed whenever an enumerated mitigating circumstance is present, but instead 'the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement' [citation] and this 'furtherance of justice' [citation] inquiry requires a trial court's ongoing exercise of 'discretion' [citation]. Thus, notwithstanding the presence of a mitigating circumstance, trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry.'"

*B. The Resentencing Brief and the 2018 Probation Report*

Prior to resentencing, defense counsel submitted a brief which included a summary of several pages regarding Aloe's childhood. Among the facts included were that Aloe had lost his mother at age six during a traffic accident where he was present. He then went on to live with his father, who, by age 12, had "openly welcomed him into his world of drugs and crime." Aloe's father, according to counsel, both used and sold drugs. Aloe began helping his father sell drugs at a young age and was allowed to drunk alcohol. By age 14, Aloe wanted to leave home, as his father had remarried and his stepmother treated him badly. Aloe's father refused to involve himself in Aloe's life except to do drugs with him.

Counsel stated that Aloe grew up on the streets in a drug and gang-infested neighborhood. As a teenager, he was shuttled between his father's and grandmother's house. His grandmother did love him, but counsel referred to this as "almost too little too late." Aloe began engaging in criminal behavior. He was diagnosed as bipolar and schizophrenic, and did not take his medication as directed. He began self-medicating with illegal drugs, including heroin. He was experiencing symptoms of mental illness at the time of the instant offense. "His life was in chaos, doing the only thing he knew how to do, hustle for money to buy drugs." No exhibits or citations were included in counsel's discussion.

Some of counsel's statements differed significantly from the information Aloe reported to the probation officer in 2018. He was 38 years old on the date of the instant offense. The probation report reflects that Aloe's health was "good," and his past health issues were listed as "back and neck problems." (Capitalization omitted.) He reported hobbies of fishing and skateboarding. The social history section of the report stated that Aloe had "attended public schools growing up and described himself as a good student. He recalled being suspended one time in high school for fighting. . . . He . . . transferred to a continuation school [at the beginning of his 10th grade year] because he began working long hours at his father's construction company and had less time for school. Over the years, he has primarily worked in the construction industry."

With respect to substance abuse, the report stated: "The defendant first tried alcohol at the age of 12 and acknowledged drinking one beer daily when he is not in custody. He first smoked marijuana at the age of 14, and smoked it on the weekends when he was a teenager. At the same age, he began taking opiate pills to manage pain from an accident in which his

8

back and neck were injured. When he was 17, he began 'snorting' methamphetamine and cocaine 'recreationally,' usually at parties with friends. The defendant admitted to taking more than the prescribed dosage of prescription medication to control his back and neck pain. He also admitted to experimentation [with] 'ecstasy.' He indicated he last used any illegal substances in his early twenties. When asked if he has a substance abuse problem, he stated, 'Yes, because I believe if I work for a living, I should be able to do drugs if I want to.'" He had never participated in a treatment program.

Aloe stated that his future plans were to "return to work so he can take care of his grandmother, whom he considers more like a mother." Notably absent from the probation report is any mention of a diagnosed mental illness, symptoms of mental illness, or prescribed medications.

## C. The Trial Court's Decision

At the resentencing hearing, as noted above, the court left Aloe's prior sentence intact for the most part. The court stated: "The court has read and considered the probation report in this case, the plaintiff's sentencing brief. The invitation to strike different enhancements. The defense sentencing brief and the resentencing brief that was provided by [defense counsel]."

"And I believe all of those are being considered today. Of course, the court recalls the case very well. And the retrial motion and everything very well.

"We are here for resentencing. The—my understanding is that in a resentencing such as this one, the court has—is entitled to—well, [Aloe] is entitled to a full resentencing. Which includes the application of any new laws in effect at the time of resentencing.

9

"So the court is considering all new laws in effect at the time of resentencing. Many of them were pointed out by [defense counsel] in her most recent brief. The court also has discretion to remove certain, for instance, enhancements or to resentence to the low term. I understand the court has that discretion. And based on the new laws, the court has further discretion. The court is considering all of those things.

"My inclination, as I mentioned to counsel, would be to strike the enhancement for great bodily injury. Which is a three-year enhancement. And it applies to the determinate term that [Aloe] needs to serve. I know [defense counsel] has asked for more. But, of course, the court recalls the case very well.

"When it comes to the—to [Aloe's] childhood, [defense counsel] explained that in detail. But I don't see a connection to this particular crime. I understand [Aloe] may not have been there had it not been for his life of committing crimes in order to fund a drug habit.

"But, as I said, it seems to me that the actual violent crime here that occurred because the victims happened along on the scene, and [Aloe] was doing his job guarding the theft that was occurring by his cohort. By his partner, Mr. Evenson.

"And I think that this fight that occurred, and I think maybe panic that occurred when the other person came out, is what really—is what was the motivating factor at the time.

"Although, again, I recognize that [Aloe] may not have been there had it not been for his drug habit. As I said, I think that the issue is whether that was a substantial factor. I think it was a factor, but a minor one.

"I think the substantial factor was that, as I said, these people happened along in the alley that night and [Aloe] had made a deal that he is

10

going to be guarding while Mr. Evenson commits the crime, the theft. And so—and, of course, the presence of the firearm. Which I said initially if there is no gun here, probably no serious crime. But there was and it was utilized.

"Again, the court recognizes it has broad discretion on a number of areas, all of which were pointed out by counsel. There may even be other new laws that are in effect that weren't pointed out by counsel. But the court is considering all of them. And with that consideration, I am going to re-issue the sentence that the court issued previously for all the same reasons."

### D. Discussion

Aloe asserts that the trial court did not specifically reject his claim of mental illness, it was required to find a connection between his mental illness and drug habit. We disagree. Aloe cites to section 1385, subdivision (c)(5), which states the "court may conclude that a defendant's mental illness was connected to the offense if" there was evidence the defendant "displayed symptoms consistent with the relevant mental disorder at or near the time of the offense." (§ 1385, subd. (c)(5).)

First, Aloe's quotation of the statute omits a key part of that subdivision concerning the types of evidence the court may consider. "A court may conclude that a defendant's mental illness was connected to the offense if, after reviewing any relevant and credible evidence, including, but not limited to, *police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts,* or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense . . . ." (§ 1385, subd. (c)(5), italics added.) The statute contemplates evidence, not merely the unsworn statements of counsel, untethered to any documents or witnesses. (See *Ortiz, supra,* 87

11

Cal.App.5th at p. 1095.) Aloe submitted no such evidence. Besides counsel's unsworn statements, the only document the trial court could rely on was the probation report, which did not support counsel's claims.

The same is true with regard to his claims of childhood trauma and prior victimization. Section 1385, subdivisions (c)(6)(A) states: "'Childhood trauma' means that as a minor the person experienced physical, emotional, or sexual abuse, physical or emotional neglect. A court may conclude that a defendant's childhood trauma was connected to the offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, medical records, or records or reports by qualified medical experts, the court concludes that the defendant's childhood trauma substantially contributed to the defendant's involvement in the commission of the offense."

Section 1385, subdivisions (c)(6)(B) states: "'Prior victimization' means the person was a victim of intimate partner violence, sexual violence, or human trafficking, or the person has experienced psychological or physical trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. A court may conclude that a defendant's prior victimization was connected to the offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, medical records, or records or reports by qualified medical experts, the court concludes that the defendant's prior victimization substantially contributed to the defendant's involvement in the commission of the offense." The only "evidence" Aloe provided of any of these factors is counsel's unsworn statements in a sentencing brief.

Second, even if counsel's statements alone were sufficient, they do not demonstrate a connection between his drug use and "symptoms

12

consistent with the relevant mental disorder at or near the time of the offense." (§ 1385, subd. (c)(5).) The fact that a drug user also has a mental illness does not necessarily require the conclusion that the drug use was a *symptom* of the mental illness without evidence connecting the two. The same is true as to his assertion of childhood trauma and prior victimization.

There was no relevant and credible evidence that at the time of the offense, Aloe was experiencing symptoms of his claimed mental disorders. Nor was there evidence the offenses he committed were connected to mental illness. His claim that he was self-medicating also contradicts Aloe's statements in the probation report. Aloe told the probation officer he had last used drugs in his early 20s. He was 38 years old at the time of the offense. Nor did he report his mental health diagnosis to the probation officer. And there is simply no relevant or credible evidence at all that any childhood trauma or prior victimization was connected to the offense.

Third, the language section 1385, subdivisions (c)(5) (mental illness), subdivision (c)(6)(A) (childhood trauma), and subdivision (c)(6)(B) (prior victimization), is permissive. The court "may conclude" these were connected to the offense if certain facts are present. (§ 1385, subd. (c)(5).) The court, however, is not required to do so. The trial court explicitly found that Aloe's drug use was a "minor" factor. The court did not find that Aloe had established any connection to the offense due to mental illness, childhood trauma, or prior victimization. This finding was within the court's discretion and supported by the record.

## II.

### SECTION 1170

Prior to the second resentencing hearing, counsel submitted a brief arguing, among other things, that the court should resentence Aloe to

13

the low term on the assault with a firearm count pursuant to section 1170, subdivision (b)(6)(A).

*A. Section 1170, subdivision (b)(6)(A)*

As amended, section 1170, subdivision (b)(6)(A) provides that "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."

Once again, abuse of discretion is the relevant standard of review. (*People v. Salazar* (2023) 15 Cal.5th 416, 428, fn.8.)

As we set forth the trial court's sentencing colloquy above, we need not repeat it here.

*B. Discussion*

Like the enhancement dismissal provisions in sections 1385, subdivision (c), and 1170, subdivision (b)(6)(A) require evidence. "[W]hen *there is evidence in the record meeting the statute's threshold requirement for triggering the lower term presumption*, a defendant is entitled to a remand for resentencing . . . ." (*People v. Lynch* (2024) 16 Cal.5th 730, 771, italics added.) As we noted above with respect to the firearm enhancement, Aloe submitted no new evidence to the court, and the only other apparent source of information about his youth, the probation report, did not support his claims of childhood trauma. Accordingly, the trial court did not err by concluding it did not find a "a connection to this particular crime."

Further, while Aloe claims the trial court made the necessary showing that trauma may have been a contributing factor to his offense, we disagree. All the court said was that counsel had "explained [Aloe's childhood] in detail." That statement does not reflect the trial court's adoption of counsel's conclusions, it was merely acknowledging what arguments counsel had set forth. Accordingly, the presumption that the lower term was appropriate was never triggered.

Counsel does not expand that argument to identify such a connection now. Counsel's approach requires multiple layers of speculation. Aloe was traumatized as a child by his mother's death, and his father treated him badly as a child and teenager, which led him to use drugs, which led him to "hustle for money" to support his drug habit, which led him to commit the instant offense—when he was 38 years old. This is simply too far removed and requires too much guesswork, unsupported by any evidence, to find a connection.

Aloe further contends the trial court might not have understood the scope of its discretion at sentencing. The record does not reflect this. First, the only reason the case was remanded for a second resentencing in *Aloe II* was to apply section 1170 as amended. (*Aloe II, supra,* G060893.) Second, the court stated on the record it had "read and considered the probation report in this case, the plaintiff's sentencing brief. . . . The defense sentencing brief and the resentencing brief that was provided by [defense counsel]." The court further stated it was "considering all new laws in effect at the time of resentencing. Many of them were pointed out by [defense counsel] in her most recent brief." That brief included a discussion of section 1170, subdivision (b)(6)(A) and a specific request to "sentence Mr. Aloe on

15

count 2 to the low term of two years due to the abuse, neglect, and exploitation he suffered as a child."

The case Aloe cites to the contrary, *People v. Panozo* (2021) 59 Cal.App.5th 825, is inapposite. In that case, neither party informed the court in its brief or in its arguments of the applicable statutes, and the trial court's oral pronouncements did not indicate it was aware of the pertinent law. (*Id.* at p. 838.) Here, the issue was briefed, and the court indicated it had read the briefs and was "considering all new laws," which we presume the court followed. (*People v. Thomas* (2011) 52 Cal.4th 336, 361.) Accordingly, we find no indication that the trial court was not fully aware of its ability to resentence Aloe under section 1170, subdivision (b)(6)(A). We find no error.

DISPOSITION

The judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


DELANEY, J.

16